JEAN DE MARCO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11875.  Promulgated December 26, 1947.

*David Oppenheim, Esq.,* for the petitioner.
*Whitfield J. Collins, Esq.,* for the respondent.

## OPINION.

ARUNDELL, *Judge*: The $11,500 which petitioner received in 1942 constituted more than 80 per cent of the total which he actually received under the Government contract. Petitioner therefore seeks the benefit of section 107 (b), which is set out in the margin.[1] The

---

[1] (b) PATENT, COPYRIGHT, ETC.—For the purposes of this subsection, the term "artistic work or invention", in the case of an individual, means a literary, musical, or artistic composition of such individual or a patent or copyright covering an invention of or a literary, musical, or artistic composition of such individual, the work on which by such individual covered a period of thirty-six calendar months or more from the beginning to the completion of such composition or invention. If, in the taxable year, the gross income of any individual from a particular artistic work or invention by him is not less than 80 per centum of the gross income in respect of such artistic work or invention in the taxable year plus the gross income therefrom in previous taxable years and the twelve

question is whether petitioner's work on the project covered a period of 36 calendar months or more.

In determining this question, petitioner contends that he is entitled to go back to certain sketches and models which he made in the period from 1937 to 1940 because, as he argues, several of the figures in his winning design were derived from these earlier sketches or models.

We think there is no merit in this argument of the petitioner. It seems to us that the term "artistic composition" used in the statute has reference to an entirety and not to a mere aggregation of parts. Petitioner's conception lies in the design as a whole. He makes no contention that before the announcement of the War Department competition he had either conceived or embodied in physical form the unitary composition which won the award. In our opinion, July 9, 1940, is the very earliest date which may be taken as the commencement of the work on this artistic composition.

Petitioner also contends that the date of completion was October 16, 1943, but we think the facts are to the contrary. In September 1942, shortly after petitioner submitted and was paid for the 6-inch model, he was orally informed by an official of the Public Buildings Administration that the carving on the building would have to be postponed indefinitely because of the war. On March 1, 1943, the Government, in accordance with its rights under the contract, wrote petitioner that it was necessary to defer the work indefinitely and that his services under the contract were terminated. The payments which were made to petitioner were for work which had been completed prior to September 8, 1942. It is true that petitioner testified that he continued "thinking" about problems which might arise in the actual carving of the sculpture on the building, but we do not think it can fairly be said that petitioner performed any work on the project, within the meaning of the statute, after September 1942. Even if we accept March 1, 1943 (when petitioner's services under the contract were formally terminated) as the final date, we still do not have a period of 36 months.

It follows that petitioner's work on the artistic composition here involved did not cover a period of 36 calendar months or more, and the respondent therefore did not err in denying petitioner the benefits of section 107.

*Decision will be entered for the respondent.*

---

months immediately succeeding the close of the taxable year, the tax attributable to the part of such gross income of the taxable year which is not taxable as a gain from the sale or exchange of a capital asset held for more than 6 months shall not be greater than the aggregate of the taxes attributable to such part had it been received ratably over that part of the period preceding the close of the taxable year but not more than thirty-six calendar months.